FILED
IN CLERK'S OFFICE
DISTRICT COURT E D N Y

★ SEP 21 2010 ★

LONG ISLAND OFFICE

DMJ:WPC
F.#2007R01701

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

JACK CABASSO,

           Defendant.

- - - - - - - - - - - - - - - - - -X

10-1094M

AFFIDAVIT IN SUPPORT OF
ARREST WARRANT

Cr. No._____
(T. 18, U.S.C., § 1341)

EASTERN DISTRICT OF NEW YORK, SS:

    JILL S. TURNER, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

    Upon information and belief, in or about and between January 2005 and December 2007, both dates being approximate and inclusive, within the Eastern District of New York, the defendant JACK CABASSO did knowingly and intentionally devise a scheme and artifice to defraud Royal Systems, Inc. and John Doe and Jane Doe, individuals whose identities are known to Your Deponent, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises and for the purpose of executing the scheme and artifice and attempting to do so, placed and caused to be placed in a post office and authorized depositories for mail matter, matters and things to be delivered by the United States Postal Service and

commercial interstate carriers according to directions thereon.

(Title 18, United States Code, Sections 1341, 2 and 3551 et seq.)

The source of Your Deponent's information and the grounds for her belief are as follows:[1]

1. I am a Special Agent with the FBI and have been so employed for approximately 23 years and am currently assigned to the Long Island Resident Agency. During my tenure as a Special Agent with the FBI, I have primarily investigated violations of federal criminal laws, including bank fraud, mail and wire fraud and money laundering.

Background

2. My investigation has revealed that the defendant JACK CABASSO was the owner and president of Aventura Technologies, Inc., a New York corporation, located at 180 Adams Avenue, Hauppauge, New York ("Aventura"). Aventura was in the business of designing, developing and manufacturing video surveillance equipment for commercial sale and sale to the United States government. Aventura maintained an internet website that had at various times at least 31 distinct domain names.

3. John Doe and Jane Doe were the owners of Royal

---

[1] As this affidavit is submitted only to illustrate that probable cause exists to believe that the defendant committed certain crimes, all the facts known to me as a result of my investigation have not been included.

2

Systems, Inc., a New York corporation, which was located at 1227 Old Walt Whitman Road, Melville, New York 11747 and formerly at 139 Horton Avenue, Lynbrook, New York 11563 ("Royal Systems"). Royal Systems was a wholesale distributor that sold surveillance equipment to retailers. Royal Systems maintained an internet website with one domain name.

    4. Google, Inc. is a California company which maintains a popular internet search engine ("Google"). When a Google user enters a search term or phrase, the Google search engine displays possible relevant websites, which may number in the hundreds or even thousands, in a queue. Google provided by contract an "Ad Campaign" service which allowed a company, for a fee, to provide to Google certain search terms, which if entered by a prospective customer, would cause that company's website to be displayed more prominently in the queue. Each time a Google user clicked on that company's website, a fee would be charged by Google to that company under its Ad Campaign contract. Google has the capability to manipulate the order of the displayed queue list in order to allow companies to be displayed in a better and more frequently visible position on the displayed list.

The Business Relationship

    5. Starting in or about June 2003, the defendant JACK CABASSO asked John Doe and Jane Doe to allow Royal Systems to act as the distributor of one of Aventura's products which was used in closed circuit televisions. John Doe and Jane Doe agreed to

do so. In or about and between 2004 and 2005, Royal Systems acted as a distributor for some of Aventura's products.

6. In or about 2004, Royal Systems launched a new website based on the defendant JACK CABASSO's evaluation and recommendation for such a website. The website was designed by an individual who was recommended by CABASSO. During this time, CABASSO suggested the creation of a new, jointly held company between John Doe and Jane Doe and CABASSO. CABASSO proposed to John Doe and Jane Doe that the new company be publicly traded. That proposal, however, never was realized.

The Scheme

7. In or about December 2004, the defendant JACK CABASSO discussed with John Doe and Jane Doe the Google Ad Campaign service for the new Royal Systems website. CABASSO assisted John Doe and Jane Doe in devising the search term words known as Ad Words, which would be used for Royal Systems's Ad Campaign. CABASSO communicated with Google regarding the Ad Campaign for Royal Systems and thereafter provided those Ad Words to Google. John Doe and Jane Doe never communicated with Google regarding the Ad Campaign for Royal Systems other than to pay the fees that were incurred for the Ad Campaign on their credit cards.

8. John Doe and Jane Doe provided their credit card information to the defendant JACK CABASSO to pay the Google fees generated by Royal System's Ad Campaign. Each time a Google user

clicked on the Royal Systems website, a fee was charged by Google to Royal Systems. John Doe and Jane Doe provided four or five different credit cards to CABASSO for the purpose of paying Royal System's Ad Campaign fees to Google. John Doe and Jane Doe had no direct contact with Google. John Doe and Jane Doe paid their credit card bills including those bills posted by Google for the Ad Campaign by U.S. Mail.

9. At all times, the defendant JACK CABASSO told John Doe and Jane Doe that the credit cards were used solely to pay the Ad Campaign costs incurred by Royal Systems. In or about and between January 2005 and December 2007, John Doe and Jane Doe paid to Google approximately $1,281,000.00 for the Google Ad Campaign, which unbeknownst to John Doe and Jane Doe included fees incurred by Aventura's Google Ad Campaign.

10. John Doe and Jane Doe never authorized the defendant JACK CABASSO to provide their credit card information to Google for the purpose of paying for Aventura's Google Ad Campaign. The total amount of unauthorized charges to Royal Systems and payments to Google by John Doe and Jane Doe caused by the defendant JACK CABASSO's conduct was approximately $909,000.00.

5

WHEREFORE, your deponent respectfully requests that a warrant be issued for the arrest of defendant JACK CABASSO so that he may be dealt with according to law.

*[signature]*
JILL S. TURNER
Special Agent
Federal Bureau of Investigation

Sworn to before me this
21 day of September, 2010

E. Thomas Boyle, MJ
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK